**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CP MEDIA LIMITED<br><br>　　　　Petitioner,<br><br>vs.<br><br>RUNAWAY HOME PRODUCTIONS, LLC<br><br>　　　　Respondent. | CASE NO. CV 10-4807 ODW (RCx)<br><br>ORDER GRANTING RUNAWAY HOME'S MOTION TO CONFIRM ARBITRATION AWARD AND DENYING CP MEDIA'S MOTION TO VACATE ARBITRATION AWARD [6, 7] |

## I.   INTRODUCTORY BACKGROUND

Now before the Court are Runaway Home Productions, LLC's ("Runaway") Motion to Confirm Arbitration Award [6] and CP Media Limited's ("CP Media") Motion to Vacate the same [7]. After considering the parties' briefs, the Court finds the matter suitable for decision without oral argument. *See* Local Rule 7-15.

On March 30, 2010, an arbitrator of the Independent Film and Television Alliance ("IFTA") awarded Runaway damages in the sum of $218,900.00 from CP Media (the "Award"). The arbitration resulted from CP Media's failure to pay certain sums due to Runaway under the terms of an International Distribution Agreement (the "Agreement"), pursuant to which CP Media obtained the right to distribute Runaway's film, "My One And Only" (the "Film"). Around April 22, 2010, the Arbitrator rendered his Corrected Award which, among other things, clarified that "there was *no* ostensible authority to terminate the [ ] Agreement." (Herrick Decl., Exh. H) (emphasis added).

CP Media filed and served its Petition to Vacate Arbitration Award on June 29, 2010, but did not file and serve a noticed motion to vacate the award until August 13, 2010. Runaway Home filed its motion to confirm the arbitration award on August 4, 2010.

Runaway argues the award should be confirmed because it "was the result of a proceeding where due process and procedural rights were observed to the letter and the arbitrator thoroughly analyzed the applicable law and set forth the Award with legal support." (Runaway Mot. at 9.) CP Media contends "although the [ ] Award may be subject to confirmation based upon the raw procedural rules, the Court's entry of judgment on the [ ] Award would reflect the enforcement of a decision that is internally inconsistent and where the ultimate conclusion contradicts the Arbitrator's specific findings." (CP Media Opp'n at 3.) Other facts shall be discussed as necessary.

## II. DISCUSSION

### 1. *CP Media's Motion to Vacate Arbitration Award* [7]

The Federal Arbitration Act ("FAA") provides: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Runaway argues CP Media's petition should be dismissed because "CP Media has not served its motion to vacate within the time allotted by the FAA." (Runaway Mot. at 10.)

It is undisputed that, although CP Media filed and served its Petition to Vacate Arbitration Award within the three-month limitations period, it failed to file a noticed motion within three months after the Corrected Award was delivered. (CP Media Opp'n at 4.) Indeed, as Runaway points out, CP Media "did not serve its motion to vacate until it had already been served with a timely-filed Motion to Confirm, [well past the three-month limitations period]." (Runaway Opp'n at 7-8.) Thus, because CP Media filed a petition to vacate the arbitration award instead of a noticed a motion, as contemplated by 9 U. S. C. § 12, "the Court should simply dismiss the Petition to Vacate, deny the Motion and confirm this Award [ ]." (Runaway Reply at 3.)

2

Runaway cites a Seventh Circuit decision for the proposition that "service of a motion to vacate is the act that stops the three-month statute of limitations." *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 572 (7th Cir. 2007). In reaching this conclusion, however, the *Webster* court focused not so much on the designation of the particular filing (Petition or Motion), but on the date that filing was served. Here, Runaway does not dispute that CP Media properly served its Petition to Vacate within the three-month limitations period. The only remaining problem is thus that CP Media filed a Petition to Vacate Arbitration Award instead of a noticed motion.

Under the FAA, an application to vacate an award "shall be made and heard in the manner provided by law for the making and hearing of motions ...." 9 U.S.C. §6. Except for a specific hearing date, CP Media argues, its Petition to Vacate Award set forth all of the elements of a motion as specified in Federal Rule of Civil Procedure 7(b)(1), which requires that a motion "must: (A) be made in writing . . . ; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." (CP Media Opp'n at 5) (the court would elevate form over substance were it to dismiss the timely-served petition).

Be that as it may, CP Media has nevertheless failed to properly challenge the arbitration award in the manner prescribed by the FAA. Primarily, CP Media has neither moved to vacate the award "in the manner provided by law for the making and hearing of motions" 9 U.S.C. §6, nor has it served upon Runaway "[n]otice of a motion to vacate ...within three months after the award is filed or delivered." 9 U.S.C.. § 12. The Court therefore finds that CP Media's failure to file a timely motion to vacate the award precludes it from challenging that award at this juncture. *See*, *e.g.*, *Romero v. Citibank USA, Nat. Ass'n*, 551 F. Supp. 2d 1010, 1013 (E.D. Cal. 2008) ("A motion to vacate an arbitration award after the three months [ ] time is not permitted, even if filed as part of an opposition to a motion to confirm an arbitration award or to assert new claims.").

Out of an abundance of caution, the Court next considers the merits of CP Media's arguments as part of Runaway's motion to confirm the arbitration award.

*2.     Runaway's Motion to Confirm Arbitration Award* [6]

The FAA mandates that a district court must confirm an arbitration award unless it is "vacated, modified or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Under 9 U.S.C. § 10, a district court may vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption on the part of the arbitrators; (3) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

CP Media does not argue for vacatur based on any of the first three grounds listed above. Instead, CP Media contends "the Award is defective, in that it is 'completely irrational' and reflects a 'manifest disregard of the law.'" (CP Media Opp'n at 8.)

Although the FAA does not sanction judicial review of the merits of arbitration awards, the Ninth Circuit has "adopted a narrow 'manifest disregard of the law' exception under which a procedurally proper arbitration award may be vacated." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007). The manifest disregard exception requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *Id.* Accordingly, district courts may not reverse an arbitration award even in the face of an erroneous interpretation of the law. *See A.G. Edwards v. McCollough,* 967 F.2d 1401, 1403 (9th Cir. 1992). Rather, to demonstrate manifest disregard, the moving party must show that the arbitrator "underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same." *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801 (9th Cir. 1961). To rise to the level of manifest disregard, "[t]he governing law alleged to have been ignored by the arbitrators must be *well defined, explicit, and clearly applicable*." *Carter v. Health Net of California, Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) (emphasis added).

Before turning to the parties' arguments, it bears emphasizing here that the FAA provides district courts with "an *extremely limited* review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 997-98 (9th Cir. 2003) (emphasis added). Here, CP Media invites the Court to thoroughly scrutinize the Award in light of the Arbitrator's specific findings of fact. (*See* CP Media Opp'n at 9.) Although CP Media's arguments push the outer limits of the Court's review authority, and ultimately fail to establish the Arbitrator's "manifest disregard of the law," a brief discussion is nevertheless warranted.

### *Manifest Disregard*

To properly explain CP Media's position, the Court will briefly set out the operative facts. To begin, the central issue of dispute here is the efficacy of Essential's termination of the distribution agreement between CP Media and Runaway. As the Arbitrator put it: "The issues in this case are in substantial part determined by what happened at the meeting in Berlin and the California law of agency." (Corrected Award at 5.) Among other things, the Arbitrator found "it more likely than not that a deal for termination of the [Agreement] was reached in the Berlin meeting between Essential and CP Media and that CP Media believed Essential had the ability to do so." (Award at 7.) The Arbitrator also found "[t]here is no issue as to whether Essential is the agent of Runaway, only the extent of Essential's authority." (Award at 11) ("Thus, the issue is whether Essential had actual or ostensible authority to enter into a termination of the [Agreement].").

CP Media contends "the conclusion that there was no ostensible authority [ ] contradict[s] the express findings of facts set forth by the Arbitrator, i.e., that the meeting occurred, that Essential agreed at the meeting to terminate, that Essential had the authority to meet in Berlin, that no writing was required to effectuate termination, that CP Media had no obligation to verify Essential's authority, and that CP Media was not negligent in failing to confirm Essential's authority." (CP Media Mot. at 11.) Not so.

Although the Arbitrator resolved some of the issues in favor of CP Media, it can neither be said that his ultimate conclusion is inconsistent with his findings of fact, nor that CP Media has met its burden of demonstrating "manifest disregard of the law." For example, that Essential had authority to meet CP Media in Berlin does not necessarily mean Essential had authority to terminate the Agreement. Indeed, as the Arbitrator observed, "there seems to be a difference between establishing a contract for distribution of a motion picture, and its termination." (Award at 12.) And, while CP Media had no obligation to verify Essential's authority and was not negligent in that regard, neither finding mandates a corresponding finding of ostensible authority. (*See* Award at 12) ("The [A]greement was signed by the production company, the agent and the distributor[,] suggesting that there might be some limitations on what the agent was permitted.").

Rather than detail CP Media's various arguments, the Court finds that no one fact (or set of facts), as found by the Arbitrator, establish the presence of ostensible authority. The Arbitrator acknowledged "[t]his issue is a close call" (Award at 7), and this Court is simply disinclined to vacate the Award, even were this Court confident it would reach a different conclusion than that reached by the Arbitrator. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.... [T]hat a court is convinced [an arbitrator] committed serious error does not suffice to overturn his decision."). At worst, the Arbitrator's decision *might* reflect a misapplication of the law, not disregard for it. *See Collins*, 505 F.3d at 879 ("The manifest disregard exception requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'") (citation omitted); *see also G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003) ("It is not [ ] enough that the [arbitrator] may have failed to understand or apply the law.) (citation omitted). In short, CP Media fails to establish the Arbitrator's "manifest disregard for the law."

In sum, Runaway has established, and CP Media does not contest the procedural propriety of the award, the Court's jurisdiction and venue. *See G.C. & K.B. Investments, Inc.*, 326 F.3d at 1103, n.4. Runaway complied with all the statutory conditions for confirming the Award, moreover, and CP Media has failed to properly move for vacatur in a timely manner. The Court has considered CP Media's arguments as part of Runaway's motion to confirm, however, and finds that CP Media failed to establish the Arbitrator's "manifest disregard for the law" or any other ground for vacating the Award.

## III. CONCLUSION

CP Media's Motion to Vacate Arbitration Award is **DENIED**. [7] Runaway's Motion to Confirm Arbitration Award is **GRANTED**.[1] [6]

**SO ORDERED**

October 4, 2010

_____
OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE

---

[1] The Court does not find problematic the Arbitrator's typographical correction of the Award by adding the word "no" to the sentence "I find that Essential has __ ostensible authority under Cal. Civ. Code 2317 to enter into the termination agreement." (Award at 5.) It is amply clear from the Award that the Arbitrator in fact intended to say that Essential has *no* ostensible authority to enter into the termination agreement.